ELISHA HALL vs. JOSEPH G. HOPKINS et al.

1. An agent must keep within the scope of his authority.

2. If the holder of a note takes another, and higher security for his debt, he must look to that security alone, and cannot afterwards, maintain an action on the note.

## ERROR to St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

This was an action brought in the St. Louis court of common pleas, by the defendant in error against the plaintiff in error, to recover the amount of a promisory note, dated September 26th, 1842, for $328 40, made by the plaintiff in error and payable to the defendants in error by their partnership style of "Hopkins & Co."

The suit was tried below, on the general issue. On the trial, the note was read in evidence, and it was admitted that the plaintiffs below were partners, using the style of "Hopkins & Co.," that the note was made in the State of New York, and that the legal rate of interest there was seven per cent.

The defendants below then read a number of depositions and other documents, and further testimony was given by the plaintiffs in reply, from all which, the following state of facts appeared:

Elisha Hall, the defendant below, was the owner of five hundred and thirty-nine and a half acres of land in the county of Chatauque and State of New York, which was incumbered by a mortgage to the Holland Land Company, to secure $1,500 and interest. On the 14th day of August, 1840, Hall sold the said tract of land to Artemas S. Rogers, subject to the land company's mortgage. A part of the purchase money, amounting to $3455 19 was unpaid, and Rogers gave Hall his bond, dated August 14th, 1840, in the penal sum of $5000, to secure said sum of $3,455 19 to be paid to said Hall by instalments, and also, the payment by Rogers of the land company's mortgage. At the same time Rogers gave to Hall a mortgage deed of the said tract of land to secure the payment mentioned in the condition of the bond. In September 1841, Rogers sold to William Clark two hundred and eighty-five and a half acres, being the south part of the forementioned land, who went into possession, and made considerable improvements, costing, as Clark swore, about $1000. During the years 1841-2, Rogers made some payments to Hall, by which the sum due on his bond and mortgage (exclusive of the land company's mortgage) was reduced to about $2,450. At the time when Hall gave Hopkins & Co. the note now in controversy, (September 26th, 1842) he executed to them an assignment of so much of the Rodgers bond and mortgage as should be sufficient to pay said note. The assignment was read in evidence and contained this clause—"I do hereby make, constitute and appoint Albert Hazletine, my true and lawful attorney, irrevocable in my name or otherwise to have, use and take all lawful ways and means for the recovery of so much of the money due upon said bond and mortgage as shall be sufficient to discharge said note." On the 28th September, 1842, Hall made another assignment to Josiah Palmitu, writing that he owed Palmitu $55 77, and he assigned to him that sum out of the Rogers bond and mortgage, and appointed Hazletine attorney to collect the same. Subsequently Hall made other assignments to other parties for various sums, all containing a like clause, appointing Hazletine attorney, and all the assignments subsequent to that, to Hopkins & Co., refer to it as annexed, and all the assignments seem to have been contained in the same paper. None

Hall vs. Hopkins et al.

of the assignments, subsequent to that to Palmitu, recite any debt, and their consideration is expressed to be "for value received." For convenience, a tabular statement of all assignments, containing the names of the assignees and their respective debts and amounts is subjoined.

| | | | |
|---|---|---|---|
| Hawkins & Co., | Sept. 26, 1842, | | $328 40 |
| Josiah Palmitu, | " 28, " | | 55 77 |
| Perez Dewey, | " 30, " | | 406 58 |
| Ira Day, | " 30, " | | 71 84 |
| Elisha Mather, | Oct. 30, " | | 139 99 |
| Stephen Mather, | " 8, " | | 51 00 |
| William Hall, | " 10, " | | 363 40 |
| Barrett & Butler, | " 14, " | | 72 42 |
| Hannah Foster, | Nov. 7, " | | 44 88 |
| Seth Cheney, | " 19, " | | 250 54 |
| Samuel Hall, | March 21, 1843, | | 251 49 |
| | | | $2036 31 |

In the fall of 1843, the Holland Land Company commenced proceedings to foreclose its mortgage extending over the whole tract. This mortgage then amounted to about $1800. The assignees under Hall held a meeting, offered a treaty with Clark, and concluded an agreement, by which Clark was to pay off the Land Company mortgage, and his part of the land being 285¼ acres, was thereupon to be released from Rogers' mortgage. This agreement was read in evidence. It bore date Dec. 22, 1843, and was signed by Abner Hazletine, attorney for the assignees. It was in evidence that Hopkins & Co. expressly assented to this agreement, but there was no proof that Hall personally assented to, or knew of the arrangement. The agreement was carried out by Clark. His part of the land was formerly sold under the Land Company mortgage, and such an arrangement was made by him with the purchaser that the mortgager was satisfied, and the north part released from the Land Company mortgage. In 1844 proceedings were commenced to foreclose the Roger's mortgage as to the 249 acres, being the northern part of the whole tract. This suit was brought in the names of Elisha Hall and the several assignees under him above named. It did not appear, however, that Hall had any personal knowledge of the suit, and the reason why he was made a formal party, was explained by the attorney who conducted the suit. Before the sale was had under this foreclosure, the assignees suspected that the security had become scant, and they held another meeting to make a further arrangement. Hopkins & Co. insisted that they had a preference, by being the first assignees, and refused to go into an agreement with the other assignees. The result was that the other assignees appointed Perez Dewey their joint agent to purchase the land at the sale for their joint benefit. The agreement was reduced to writing, and signed by the several assignees. It bears date 27th March, 1815. The agreement does not speak of Dewey's purchasing the claim of Hopkins & Co., but the witness says such was the understanding of a memorandum signed by Dewey at the foot of the agreement mentions the claim to Hopkins & Co., as included in his advances. On the same 27th of March, 1845, Hopkins & Co. assigned by their writing to Perez Dewey all their interest in the Rogers' mortgage, and all securities against Elisha Hall for the same demand.

The sale under the foreclosure of the Rogers' mortgage took place April 2nd, 1845, and Perez Dewey became the purchaser at the price of $2090. At this time the several amounts, assigned by Hall with interest, came to about $2375. No proof of the actual costs in the foreclosure, proceedings was offered, but evidence was introduced that in foreclosure cases in N. York, the costs were ordinarily about $100. No proof was made as to the ultimate disposition of the land purchased by Dewey. Evidence was given on the trial, on behalf of the defendant, as to the value of the land released by Clark. It was admitted on all hands to be the most reliable fact, comprising about 40 acres more in quantity and more considerable improvements. Anson Chamberlin, Samuel Barrett and William Hall, (the last two being assignees) swore that the land was worth, during the years 1843-4, $12 per acre. No direc

testimony as to the value of the land was produced on behalf of the plaintiffs. William Hall in answer to a question by plaintiff, stated that he did consider the arrangement with Clark a beneficial one for the assignees; on the contrary, his motive in assenting to it was, to favor Clark.

At the close of the testimony, the defendant below moved this instruction:

"The jury is instructed that as the note sued on appears from the plaintiff's evidence, to have been assigned to Perez Dewey, on the 27th of March, 1845, the plaintiffs are not entitled to recover in this action." This instruction was refused and defendant excepted.

These instructions were then given for plaintiffs.

1. The transaction with Wm. Clark, as detailed in the evidence, is no discharge of the defendant, if, under the circumstances, no greater amount of money would have been realized for the land released, than the amount due the assignees of the Holland Land Company on the prior mortgage.

2. The transaction mentioned in the first instruction, is no discharge of defendant, if assented to by him or his authorized attorney, either before the agreement made or ratified afterwards.

3. Abner Hazletine, under the evidence in the cause, and upon the true instruction of the several assignments of an interest in the Rogers' mortgage, was the attorney in fact of the defendant, and if the jury believe from the evidence that the arrangement made with Clark, and the subsequent agreement with the assignees, and the purchase of the premises for the benefit of all concerned, were all done in good faith, and with the advice and concurrence of said Abner Hazletine, acting as defendant's attorney, the defendant cannot set up said matters in discharge of his liability.

4. The assignment of Hopkins & Co. being collateral, and the other assignments absolute, the subseques could compel Hopkins & Co. to exhaust their remedy on the note before taking their pay from the fund assigned; and if the jury believe that Perez Dewey, on behalf of himself, and other assignees of portions of the Rogers' mortgage, have advanced the money to Hopkins & Co. for the note sued on, the present parties in interest succeed to all the rights and liabilities of Hopkins & Co., one of which is to collect the money on the note, and in case of a deficiency in the proceeds of the Rogers' mortgage, to pay all except Hopkins & Co., to be excluded from every participation in such proceeds, unless the note cannot be collected. If the note can be collected, that must be done; if it fail, then the party holding the lien has the right to be first paid.

5. That the assignment to Hopkins & Co. was prior in time, and first to be paid, does not aid the defendant, or bar the plaintiff's right to recover, unless it shall appear that the proceeds of the Rogers' mortgage have been sufficient to pay all the claims upon them, created by the defendant; if the jury shall believe that Hopkins & Co. held the note in question, and also the assignment in evidence, as collateral, and that subsequent assignments to the amount of the debt of Hopkins & Co. were absolute, and such subsequent assignees had no security, except the absolute transfer of the interest assigned in the Rodgers' mortgage.

Defendant excepted to the giving of the above.

The court then gave these instructions on motion of the defendants:

2. If the jury find that the note sued on, was secured by the assignment of a mortgage to the plaintiffs by defendant, and that the plaintiffs, after making such assignments, did, without the consent of the defendant, enter into an arrangement by which they released a portion of the mortgaged premises, in value equal to or greater than the amount of said note, then the plaintiffs are not entitled to recover in this action.

3. If the jury find that the mortgaged premises were sold under the foreclosure of the mortgage, by Rodgers, for a sum equal to or greater than the several sums mentioned in the assignments by the defendant, then the plaintiffs are entitled to recover.

4. The jury are instructed that the improvements made on mortgaged land, by the mortgager, or any person claiming under him, subsequent to the mortgage and prior to the foreclosure, are bound by the mortgage.

5. The jury are instructed that if they find from the evidence that the assignees under defendant of the Rodgers' mortgage, by arrangement among themselves, became the purchasers of the foreclosure of the Rodgers' mortgage, they are accountable to said defendant for the proceeds of the premises thus purchased, and such assignees cannot recover of, the defendant, without proving that such proceeds were insufficient to satisfy the sums for which the defendant made the assignments.

8. The jury are instructed that the circumstances that the arrangement with Clark about the release of the land held by him from the Rodgers' mortgage, was made by Hazeltine, is not evidence of defendant's assent to such arrangement, although Hazeltine was the agent and attorney of the defendant at the time: if the jury find that in making such arrangement, said Hazeltine acted solely as the attorney of the assignees, under the defendant, professing at the time to represent the assignees, and not the defendant.

The court refused the following made by the defendant:

6. If the assignees under the defendant became the purchasers, as mentioned in the last instruction, and were the holders of the land thus purchased at the time of the commencement of this suit, the defendant would be entitled, as against the assignees, to the benefit of any rise in the value of the land, and the plaintiffs cannot recover in this action without proof that the value of the land, at the time of bringing this suit, was insufficient to satisfy the sums for which the assignments were made.

7. In the absence of the proof mentioned in the last instruction on the part of the plaintiff, the jury ought to find for the defendant.

9 The jury are instructed that there was no power conferred upon Hazeltine, by his appointment as attorney in fact, by defendant, to comproimse the mortgage given by Rodgers, or to release the mortgaged premises, or any part of them.

10. If the jury find that the purchase under the foreclosure of the Rodgers' mortgage was made by defendant's assignees for the benefit of all concerned, in pursuance of an arrangement to that effect, then the defendant is entitled to the value of the premises purchased, irrespective of the nominal sum for which the said premises were sold, and the plaintiffs, before they can recover, must show at what price they have sold the said premises, or their true value, if they are still holden under the purchase at the foreclosure.

Defendant excepted to the refusing of the above.

The court, on plaintiff's motion, gave the following:—

6. By the proceeds of the premises in the instruction given, is intended, the sum bid at the sale of the premises on the Rodgers mortgage less the amount properly chargeable on such sums for costs and expenses.

Defendant saved an exception to that instruction.

The jury found a verdict for the amount of the note and interest.

Defendant made his motion for a new trial assigning the several reasons.

The court overruled this motion and defendant excepted.

FIELD, for plaintiff in error.

I. As the note, on which the suit was brought, had been assigned by the plaintiffs in writing, on the 27th March, 1845, while the Rev. C. of 1835 was still in force, the plaintiffs, on their own showing, had no cause of action, and the court ought to have given the defendants instruction to that effect. Able vs. Shields, 7 Mo. R. 120.

II There was error in giving the plaintiff's 3rd, and refusing the defendant's 9th instruction; for it is well settled that an attorney, appointed to collect a demand, has no power to compromise it. Story's agency, § 99.

Besides, it is apparent, that in the present case, the appointment of Hazeltine as attorney, was not the result of any previous confidence on the part of Hall, but was inserted merely to make the transfer to the assignees effectual.

Hall vs. Hopkins, et al.

III. The plaintiff's 4th intruction is erroneous for several reasons: 1st. It undertakes to marshall the securities of the several parties on the fund derived from [the Rogers mortgage, according to the principles of courts of equity. But it is insisted that the court below, as a court of law, was incompetent to make such an adjustment.

The proper parties were not before it.

Moreover, it will be observed, that all the parties interested in the fund were parties to the suit in chancery, to foreclose the Rogers mortgage. Any equitable disposition of the fund might then have been properly asked for and ordered. In the absence of any such special direction in the chancery suit, a court of law must regard the legal privity of the parties only; and as it is admitted that the plaintiffs had the first legal right, their note must be considered by a court of law as paid out of the fund.

2d. The assignments subsequent to that of Hopkins & Co. refer to it expressly, and the fair construction of these assignments is, that those assignees were to take subject to the prior assignment to Hopkins & Co.

The equitable principle contained in the instruction is consequently inapplicable.

3d. At all events, the assignees subsequent to Hopkins & Co. can claim, as assignees only, and not as creditors of Hall. They are therefore creditors of Rogers while Hopkins & Co. are creditors both of Rogers and Hall. In such case the rule of equity, as to marshalling securities, does not apply. 1 Sty. Eq., § 642 et seq.

4th. The assignments, subsequent to that to Hopkins & Co., were all for specific parts of the Rodgers bond and mortgage. The fund, derived from the foreclosure, was to be apportioned among the parties *pro rata*, except that Hopkins & Co. were to be paid in full. Donley vs. Hayes, 17 Serg. & Rawle, 400; Bets vs. Hubner, 1 Pa. Rep. 280; Ewing vs. Arthur, 1 Humph. 537.

| | |
|---|---|
| The whole sum due on the Rogers mortgage | $2,675 |
| Hopkins & Co.'s lien on the whole | $ 385 |
| Amount assigned to others | 1,990 |
| Hall's interest not assigned | 300 |
| | $2,675 |

The apportionment of the fund would be as follows:—

| | |
|---|---|
| Fraud derived from foreclosure | $2,190 |
| Assignees after Hopkins & Co would take | $1,630 |
| Hopkins & Co.'s *pro rata* | 315 |
| Hall for residue | 245 |
| | $1,190 |

The balance of Hopkins & Co.'s note, $70, would fall on the other shares, and to that extent only, under the most favorable view for the assignees, would the equitable rule invoked in the instruction be applicable. But as the assignees have in fact $245 of Hall's money in hand, they can have no claim on him.

It will be observed that the assignments extend to the bond as well as the mortgage, and although the mortgage has exhausted, the assignees are at liberty to enforce payment of the bond by Rogers.

IV. There was error in refusing the defendants' 10th instruction, for the plaintiff's 3d instruction assumes that the purchase at the foreclosure, and of the Hopkins note, was for the benefit of all concerned. Dewey, then, could not call on Hall for the payment of the note until the fund in his hands was exhausted. That fund was the amount realized from a sale of the land, or its value, and not the nominal price at which it was sold on the foreclosure. It was a prerequisite to a recovery on the note, that the state of the fund should be shown.

HAIGHT, for defendant in error.

I. The first instruction asked by plaintiff in error was a misapprehension. There was a

decision that the assignee must sue in his own name, but this is altered by the Rev. Statute of 1845. According to the law as then enacted, and now remains, the assignee of a note cannot sue in his own name unless the assignment is on the note. The decision was under the act of 1835. Abel vs. Shields. An examination of the statutes will show the changes.

II. The instructions given by the court for the defendant in error, are not erroneous in law. To the first instruction there is no objection, nor to the second. The third raises the question as to Hazletine's power to assent to the arrangement made with Clark. The power conferred on looking at the several assignments, appears to be as full and ample as can be conferred on an agent in the arrangement of a debt. See several of the last assignments, where it is said he (Hazletine) is to what may seem to him proper in the premises

III. The fourth instruction states a principle, to which there is no dispute. Its application only is denied. It is well stated in 4th Little 169, Bank. of Kentucky vs. Nance's Administrator.

The principle applies as well to purchasers as to creditors. If a slave should be purchased on which the vendor had given a lien, with other slaves, to secure a debt, the vendee could compel the person holding the lien to sell others before coming upon the one he had purchased.

BIRCH, J., delivered the opinion of the court.

It is by no means apparent to our understanding that Hazletine was clothed with authority to bind Hall in the manner implied in the instructions of the court below.

The assignment to Hopkins & Co. was of "so much of the amount due upon the mortgage and bond executed to him (Hall) by Rogers, as should be sufficient to satisfy the note" now in suit—the one-half to be paid out of one, and the remainder out of a subsequent installment falling due by said bond and mortgage—and the specific and *only* power which seems to have been conferred upon Hazletine was "to have use and take all lawful ways and means for the recovery of *so much* of the money due upon the bond and mortgage" which had been thus transferred in part to Hopkins & Co. "as shall be sufficient to discharge the said note *at the time herein before stated.*"

It may be as well to state here as elsewhere, that "the times" or periods above alluded to, when the note was thus to be discharged, were the first day of January, 1843, and the first day of January, 1844—concurring, in that respect, with the periods when the installments secured by the bond and mortgage which he had received from Rogers and assigned (in part) to cover this indebtedness would fall due. It is proper to add, also, in this connexion, that the transfer or assignment to Hopkins & Co., was prior in date, and (as we think) had priority in every other respect to any of the subsequent assignments; and that as it seems by no means ambiguous or uncertain in its terms, there is neither necessity or priority in construing it in reference to the phraseology of the subsequent assignments.

---

Monday vs. Bryan, to use of Desloge.

---

We have perhaps thus, already, sufficiently denoted our disconcurrence in the assumption, that under circumstances like those detailed in the statement of this case, the subsequent assignees could compel Hopkins & Co. to exhaust their remedy upon the *note* before they were allowed to proceed upon the mortgage. On the contrary, it appears to us that the governing and preponderant equities would indicate the exact reverse. Were it otherwise, however, as contended by the counsel for the defendant in error, it should be deemed a sufficient answer for all the practical purposes of this case that they did not so construe either their rights or their authority, when interposing themselves as parties and assenting to an arrangement *wholly unauthorized* by Hall, (and for which they are of course alone responsible,) whereby the security he had provided for them was not only not pursued according to the mutual implied arrangement, but broken up and ultimately squandered and scattered amongst others.

The wrong thus inflicted upon the defendant is unalleviated by answering that he might even yet overturn the unauthorized if not collusive arrangement by which it is alleged he was defrauded of much which should have been realized for him under the mortgage, even beyond the claims of his creditors. We think his remedy (pro tanto at least) is appropriately here, *now*—it being a sufficient defence to the action pending against him upon the note, to plead and prove as he has done, the virtual acceptance of another and higher security, from which more was realized than is now claimed, and which (to say the least) it was the plaintiff's own fault that it was permitted to go into the hands of others instead of their own. It is therefore clear to our minds that to those persons alone can the plaintiffs here look; and that the judgment of the court of Common Pleas must consequently be reversed, and the cause remanded for further proceedings in conformity with this opinion.